**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PHILLIP SOMERVILLE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 03-3718 (JAG) |
| | : | |
| v. | : | |
| | : | |
| JERRY SPEIZALE, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES**:

> PHILLIP SOMERVILLE, #24593-050, Plaintiff pro se
> FCI Ray Brook
> P.O. Box 300
> Ray Brook, New York  12977

**GREENAWAY, JR.**, District Judge

Plaintiff Phillip Somerville, a prisoner who is confined at FCI Ray Brook, seeks to bring this action in forma pauperis, pursuant to 28 U.S.C. § 1915.  Based on his affidavit of poverty and accompanying prison account statement, the Court (1) grants the application to proceed in forma pauperis; (2) directs the Clerk to file the Complaint; (3) assesses the $150.00 filing fee against Plaintiff; (4) directs the agency having custody of Plaintiff to deduct an initial partial filing fee  from Plaintiff's prison account and forward the payment to the Clerk when funds are available; and (5) directs the agency having custody of Plaintiff to forward payments from Plaintiff's prison account to the Clerk each subsequent month that the amount in the account exceeds $10.00, until the $150.00 filing fee is paid in full.  See 28 U.S.C. § 1915(a), (b).  Having thoroughly reviewed Plaintiff's allegations, this Court will dismiss the Complaint.

## I.  BACKGROUND

Phillip Somerville asserts violations of his constitutional rights, under 42 U.S.C. § 1983, arising from his incarceration at the Passaic County Jail.  The named Defendants are Jerry Speizale, the Passaic County Sheriff, and Charles Meyers, Warden at the Passaic County Jail. (Compl. ¶¶ 3-4.)  Plaintiff states that while incarcerated at Passaic County Jail during 2002 and 2003, the Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights by refusing to serve him Halal meat meals, prohibiting him from wearing Muslim head gear, preventing his attendance at Friday Jumu'ah services, housing him in substandard conditions, and searching his  jail cell without provocation.  (Compl. ¶¶ 5, 12-15.)

Somerville asserts the following facts, which the Court accepts as true for the purpose of this review.  He alleges that the Passaic County Jail did not provide Halal meat to prisoners requesting it for religious reasons.  (Compl. ¶ 12.)  Instead, the jail offered a vegetarian option of beans, peanut butter, and soy products for inmates whose religious beliefs required meat to be prepared in a specific manner.  Id.  Somerville asserts that inmates requesting the vegetarian option received a peanut butter sandwich for more than half of their meals.  Id. Somerville alleges that many of these vegetarian meals were served cold and that officials mistakenly served meals with meat to Muslim inmates, who then had to "wait in excess of 45 minutes for a cold vegetarian meal." Id.  When prisoners complained about the amount of peanut butter sandwiches in their diet, officials replied by offering inmates the option of either eating the peanut butter sandwich or forgoing the meal and submitting a complaint.  Id.  Somerville argues that by not providing him with Halal meat prepared in conformance with Muslim beliefs, the jail violated his right to free exercise of religion under the First Amendment. Id.

2

Somerville further asserts that the Passaic County Jail outlawed the wearing of Muslim head gear because officials determined that it was gang-related.  (Compl. ¶ 13.)  He alleges that he is a Muslim inmate and that the regulation impaired his First Amendment right to free expression of religion by prohibiting his ability to cover his head in conformance with his Muslim beliefs.

Next, Somerville asserts that state and county Muslim prisoners at the Passaic County Jail attended Jumu'ah services each Friday.  (Compl. ¶ 13.)   He alleges that, because the jail's classification policy segregated federal detainees from state and county prisoners, he was not permitted to attend the Jumu'ah services on Fridays.  Id.  He contends that the denial of access to Friday Jumu'ah services violated the Free Expression clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment.

Somerville also alleges that the jail housed sixteen federal detainees in one dorm containing only two toilets, two sinks, and one working shower. (Compl. ¶ 14.)  He complains that, because the telephones were installed above the toilets, one inmate may have been talking on the telephone while another was using the facilities.  Somerville asserts that the living conditions at Passaic County Jail violated the Eighth Amendment protection against cruel and unusual punishment.

Lastly, Somerville complains that jail officials repeatedly searched his personal belongings at all hours of the day and night without probable cause.  He asserts that the violation of his privacy violated his Fourth Amendment protection from unreasonable search and seizure.

 Plaintiff seeks injunctive relief and damages for violation of his constitutional rights under 42 U.S.C. § 1983.  (Compl. ¶¶ 18-19.)

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee. The PLRA requires the Court to review a prisoner's complaint to identify cognizable claims and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990). "A pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers. Haines, 404 U.S. at 520. At a minimum, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." <u>Neitzke</u>, 490 U.S. at 327. Rather, the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

Liberally construing Plaintiff's allegations and accepting them as true, this Court reads the instant Complaint as potentially raising the following claims under 42 U.S.C. § 1983:  (A) Defendants violated the Free Exercise clause by failing to provide Halal meals, banning religious head gear, and refusing to allow him to attend Friday Jumu'ah services with state and county inmates; (B) the conditions of confinement inflicted cruel and unusual punishment prohibited by the Eighth Amendment, applicable to states through the Fourteenth Amendment; (C) Defendants violated the Fourth Amendment by searching inmate dorms without probable cause; and (D) Defendants violated the Equal Protection clause of the Fourteenth Amendment by allowing state and county prisoners to celebrate Friday Jumu'ah services and denying him the same opportunity.

## III.  DISCUSSION

To state a claim under 42 U.S.C. § 1983 a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) the deprivation was committed or caused by a person acting under color of state law.[1]  See <u>West v. Atkins</u>, 487 U.S. 42, 48

---

[1] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,

(continued...)

5

(1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).  As Defendants' operation of the jail constitutes state action within § 1983, this Court will examine Plaintiff's allegations to determine if dismissal of any claim or Defendant is required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## A.  Free Exercise of Religion

Plaintiff asserts that Defendants violated his First Amendment right to free exercise of religion by (1) refusing to provide Halal meat meals, (2) banning the wearing of religious head gear, and (3) denying federal detainees the opportunity to attend Jumu'ah services with state and county prisoners. (Compl. ¶¶ 12-13.)

Inmates do not abandon their constitutional rights by virtue of their incarceration.  The Supreme Court of the United States stated in Turner v. Safley, 482 U.S. 78, 84 (1987), that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."  At the same time, the Court recognized an "inmate's constitutional rights must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives." Fraise v. Terhune, 283 F.3d 506, 515 (3d Cir. 2002) (citing Turner, 482 U.S. at 84).  Due to the particular nature of prisons, the constitutional rights of inmates may be restricted in order to accomplish penological objectives.  Id.

---

[1](...continued)
> or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

When reviewing the constitutionality of prison regulations, courts should show deference to the judgment of prison administrators.  See  O'Lone v. Shabazz, 482 U.S. 342, 349  (1987).  Prison administrators, "who are actually charged with and trained in the running of the particular institution under examination" are the best arbiters of the need for specific prison regulations to maintain institutional safety and promote prisoner rehabilitation.  Bell v. Wolfish, 441 U.S. 520, 562 (1979); see also Pell v. Procunier, 417 U.S. 817, 827 (1974) (courts should ordinarily defer to their expert judgment unless officials exaggerate the legitimacy of the interest behind the regulation).  Courts should "take cognizance of the valid constitutional claims of inmates," but they are "ill equipped to deal with the increasingly urgent problems of prison administration and reform."  Williams v. Morton, 343 F.3d 212, 216 (3d Cir. 2003) (quoting Turner, 482 U.S. at 84).

To guarantee due deference is shown to prison officials, courts examine the constitutionality of prison regulations using a reasonableness standard set forth in Turner v. Safley.  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.  Turner requires courts to weigh four factors in determining reasonableness:  "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are any 'ready alternatives' to the regulation."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (quoting Turner, 482 U.S. at 89-91); see also Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002).

Furthermore, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217 (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).


(1)  Halal Meat

Plaintiff alleges that the Passaic County Jail violated his right to free exercise of religion by not providing Halal meat in accordance with his Muslim dietary restrictions.  Plaintiff argues that the vegetarian option for inmates with religious restrictions regarding meat is not a valid alternative under the Free Exercise clause.

This claim is governed by the Third Circuit's ruling in Williams v. Morton, 343 F.3d 212 (3d Cir. 2003).  In Williams, the Third Circuit considered the identical issue Plaintiff raises here, i.e., whether the First Amendment requires prisons to provide Muslim inmates with Halal meat instead of a vegetarian diet.  Applying the Turner factors, the Third Circuit rejected the prisoners' free exercise claim and agreed with the district court, (Brown, J.), "that providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget." Id. at 218. In light of Williams, this Court is constrained to dismiss the First Amendment Halal meat claim for failure to state a claim upon which relief may be granted.[2]

_____

[2] Plaintiff also complains that the vegetarian meal plan includes too much peanut butter and is not served hot.  See Johnson v. Horn, 150 F.3d 276, 283 (3d Cir. 1998) ("If the cold kosher diet currently being provided satisfies kosher requirements, then the hot kosher diet which the inmates suggest does not accommodate the inmates any more 'fully;' it merely accommodates them in a more palatable manner.  Taste, however, is not a relevant constitutional consideration") (overruled on other grounds).

(2)  Religious Head Gear

Plaintiff asserts that the rule prohibiting the wearing of religious head gear as gang-related violates the Free Exercise clause.  This claim fails, however, because the Third Circuit rejected a substantially similar claim in Fraise v. Terhune, 383 F.3d 506 (3d Cir. 2002).  In that case, inmates challenged a New Jersey prison regulation on free exercise grounds, which designated the Five Percent Nation as a gang (security threat group) and directed the confinement of members in a security threat group unit.  Applying Turner, the Third Circuit upheld the ruling of the district court (Hayden, J.) that designation of the Five Percent Nation as a security threat group was rationally related to maintaining order and security.  The Third Circuit rejected the argument that proof was required that members of the Five Percent Nation were more violent, and deferred to the judgment of the responsible prison officials that the Five Percent Nation presents a security threat within the state's correctional system.  Id. at 517-18.

> What the dissent seems to demand is either (a) proof that the tenets of the Five Percent Nation require members to engage in violence or (b) hard statistical proof that members of the Five Percent Nation commit proportionally more acts of violence in New Jersey prisons than do members of other religions.  Demanding proof of this statute before correctional officials can act to prevent gang violence is fundamentally inconsistent with Turner and would in all likelihood be paralyzing.

Id. at 518.

In this instance, Plaintiff's claimed Free Exercise claim parallels the inmates' claim in Fraise.  As in Fraise, Plaintiff claims his right to free expression of religion has been impinged by a prison regulation prohibiting the wearing of religious head gear as gang-related activity.  Like the prohibition on gang-related activity in Fraise, the restriction on gang-related clothing is

rationally related to security and satisfies the four <u>Turner</u> reasonableness factors.  First, Passaic County Jail's ban on head gear determined to be gang-related serves the legitimate interest of maintaining "order and security within the prison system." <u>Fraise</u>, 283 F.3d at 517. Second, as in <u>Fraise</u>, Plaintiff retains alternative methods of religious expression because the regulation prevents only the specific religious practice of wearing head gear, not Muslim religious practice in general. Third, accommodation of the asserted religious right to wear religious head gear may subject other prisoners to danger and intimidation by allowing inmates to wear gang-related clothing.  Finally, as in <u>Fraise</u>, no ready alternative exists for the jail to regulate gang-related clothing.  Therefore, the prison regulation banning religious head gear as "gang-related" does not violate Plaintiff's First Amendment right to free expression of religion because it is reasonably related to a legitimate government interest in security.

In deciding whether Plaintiff's religious head gear is in fact gang-related, this court defers to the judgment of prison officials. As established in <u>Fraise</u>, it would be "potentially paralyzing" to require prison officials to prove an activity or article of clothing is gang-related before enforcing a regulation intended to improve prison safety for inmates and guards. Therefore, this court rejects Plaintiff's argument that the regulation banning religious head gear violates his First Amendment right to free expression of religion.

(3)  Attending Jumu'ah Services with State/County Inmates

Plaintiff alleges that the jail regulation requiring segregation of federal detainees from state and county inmates violated his First Amendment rights because it prevented him from attending Friday Jumu'ah services with state and county inmates.

In O'Lone v. Shabazz, 482 U.S. 342 (1987), Muslim inmates challenged a New Jersey classification regulation which prohibited inmates assigned to outside work details from returning to the prison during the day except in the case of an emergency on Free Exercise grounds because it prevented Muslims assigned to outside work details from attending Jumu'ah services on Fridays. The Supreme Court rejected the Free Exercise claim, deferring to the determination of prison administrators that a rule preventing inmates from returning from outside work details was rationally related to security and rehabilitative concerns relating to work. Id. at 350-52.

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time. But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end.

Id. at 351-52.

As in O'Lone, Plaintiff's free expression claim fails because the prison regulation which prohibited his attendance at Jumu'ah services is reasonably related to a legitimate security classification. Under these circumstances, this Court will dismiss the First Amendment Jumu'ah claim for failure to state a claim upon which relief may be granted.

B.  Cruel and Unusual Punishment

Plaintiff raises a claim that prison conditions violated his Eighth Amendment protection from cruel and unusual punishment. To establish an Eighth Amendment violation for conditions of confinement, Plaintiff "must allege both an objective element--that the deprivation was

sufficiently serious--and a subjective element--that a prison official acted with a deliberately culpable state of mind, i.e., deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d. Cir. 1996) (relying on Wilson v. Seiter, 501 U.S. 294 (1991)).  To satisfy the objective element, prison conditions must be more than uncomfortable; they must deprive inmates of basic necessities or fail to protect their health or safety.  See, e.g., Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle v. Gamble, 429 U.S. 97 (1976).

In this case, Plaintiff claims an Eighth Amendment violation based on cramped conditions, the lack of privacy while using the toilet, and the lack of variety in an otherwise nutritious diet.  (Compl. ¶¶ 12, 14.)  However, Plaintiff's allegations do not meet the objective element.  Plaintiff does not allege that the jail fails to protect his health or safety, deprives him of basic necessities, or inflicts injury.  While Plaintiff's account of his living conditions and diet document the discomfort associated with living in a jail, it does not allege any deprivation which would rise to the level of the "sufficiently serious deprivation" required for a claim of cruel and unusual punishment.  Therefore, Plaintiff's Eight Amendment claim is dismissed for failure to state a claim.

## C.  Unreasonable Search and Seizure

Plaintiff claims prison officials violated his Fourth Amendment rights when they searched his prison dorm without provocation and rummaged through his personal items.  However, this claim is devoid of merit because a convicted prisoner does not have a legitimate expectation of privacy in his or her prison cell which is protected by the Fourth Amendment. See Hudson v. Palmer, 468 U.S. 517, 526 (1984);  Bell v. Wolfish, 441 U.S. 520, 555-57 (1979).  Plaintiff's

Fourth Amendment claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim.

D.  Equal Protection

Finally, Plaintiff asserts an equal protection claim, arguing that prison regulations treat federal detainees unequally by preventing them from celebrating Jumu'ah services while allowing state and county prisoners to attend.  Claims that a prison regulation violates an inmate's equal protection rights should be analyzed under the Turner standard for reasonableness.  See DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004).  In this case, the prison regulation which prevents Plaintiff from attending Jumu'ah services has already received significant Turner analysis in the free exercise section of this opinion and by the Supreme Court in O'Lone. See supra.  As the Supreme Court stated in O'Lone, a regulation segregating prisoners to maintain security is reasonably related to a legitimate government interest. See supra. Therefore, Plaintiff's Fourteenth Amendment claim is dismissed for failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

The Court grants Plaintiff's application to file the Complaint without prepayment of the filing fee, pursuant to 28 U.S.C. § 1915(b), and dismisses the Complaint.


Dated: August 5, 2005

                     S/Joseph A. Greenaway, Jr.
                     JOSEPH A. GREENAWAY, JR., U.S.D.J.